UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

E.C.L.R.Q., by and through her
guardian ad litem KESHAWNDRA
BROWNER,

               Plaintiff,

               v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

Case No. ED CV 15-0032-DFM

MEMORANDUM OPINION AND
ORDER

Keshawndra Browner, acting as guardian ad litem for her minor child
E.C.L.R.Q. ("Plaintiff"), appeals the Commissioner's final decision denying
Plaintiff's application for disability benefits. For the reasons discussed below,
the Court concludes that the Administrative Law Judge ("ALJ") gave a clear
and convincing reason for discounting the opinions of the examining
psychiatrist and psychologist. The Commissioner's decision is therefore
affirmed and the matter is dismissed with prejudice.

///

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on May 5, 2003. Administrative Record ("AR") 124. On November 21, 2011, she filed an application for child disability benefits, alleging disability beginning August 1, 2009. AR 17.  The ALJ determined that Plaintiff had the severe impairments of selective mutism; anxiety disorder; unspecified learning disorder; and attention deficit hyperactivity disorder ("ADHD"). Id. However, he found that Plaintiff's impairments did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ also determined that Plaintiff did not have an impairment or combination of impairments that functionally equaled the listings. Id.

# II.

## ISSUE PRESENTED

The parties dispute whether the ALJ erred in failing to properly consider the opinions of the examining doctors. See Joint Stipulation ("JS") at 4.

# III.

## DISCUSSION

**A.    Applicable Law**

The Social Security Administration has enacted a three-step sequential analysis to determine whether a child is eligible for disability benefits. 20 C.F.R. § 416.924(a). First, if the child is engaged in "substantial gainful activity," she is not disabled. Id. § 416.924(b). Second, the Commissioner determines whether the child has a "medically determinable impairment that is severe." Id. § 416.924(c). Third, if the child has a severe impairment, the Commissioner determines whether the impairment meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 416.924(c)-(d). If the impairment satisfies this requirement, the child is presumed disabled. If a child's impairment does not

2

meet or medically equal a listed impairment, the Commissioner will consider whether the child's impairment is severe enough that it is functionally equivalent to the severity required by the Listings. Id. § 416.926a.

In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself, and (6) health and physical well-being. Id. § 416.926a(a)-(b). To demonstrate functional equivalence, the child must exhibit "marked" limitations in two of the domains, or an "extreme" limitation in one domain. Id. § 416.926a(d). A "marked" limitation is one that "seriously" interferes with the child's ability to initiate, sustain, or complete activities. Id. § 416.926a(e)(2)(i). An "extreme" limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities. Id. § 416.926a(e)(3)(i).

**B.    Relevant Factual Background**

On March 24, 2012, psychiatrist Sharmin Jahan examined Plaintiff on behalf of the agency. AR 196-201. Plaintiff's mother provided her medical history and most other information because Plaintiff was "unable to engage in conversation due to her anxiety and fearfulness." AR 200; see AR 196-98. Dr. Jahan performed a mental-status examination but was unable to assess Plaintiff's cognition in part because of her lack of communication. AR 199. He diagnosed generalized anxiety disorder, social phobia, and ADHD, based in part on Plaintiff's mother's report of past diagnoses and symptoms. AR 200. Dr. Jahan assessed a Global Assessment of Functioning ("GAF") score of 55.[1]

---

[1] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. See Diagnostic and

3

Id. He opined that, "[b]ased on today's evaluation and from a psychiatric standpoint, it appears that the claimant has marked symptoms of anxiety, which is interfering with her growth, development, social and academic performance." Id. Dr. Jahan recommended that Plaintiff receive individual and group therapy, as well as psychotropic medications to address her anxiety. Id. He concluded that her "psychiatric . . . prognosis is guarded without treatment." Id.

On February 13, 2013, Plaintiff appeared before the ALJ at the hearing. AR 33-34. Her mother was present. AR 31. The ALJ asked Plaintiff a series of questions, to which she offered almost no audible response. AR 33-34. She said, "Uh-uh," when asked whether she wanted to talk and gave positive non-verbal responses when asked whether she went to school and had brothers or sisters. Id. Plaintiff's mother also testified. AR 37-46. Near the end of her testimony, Plaintiff's attorney asked her mother whether Plaintiff's response to the ALJ's questions, "with the silence and the withdrawing and almost crying," was "normal for her." AR 46. Plaintiff's mother said that it was normal for her with strangers. Id. The ALJ said that he would order a psychological examination "because I'm not comfortable at this point." AR 46.

Accordingly, on March 10, clinical psychologist Rose Colonna examined Plaintiff. AR 254-49; see AR 182. Her mother was present. AR 257. Dr. Colonna was unable to perform a complete mental-status examination or administer various tests due to Plaintiff's complete failure to respond to questions or even look at Dr. Colonna during the evaluation. AR 256-58. Based upon her limited examination, Plaintiff's mother's report, and review of three treatment records, Dr. Colonna opined that it appeared that Plaintiff had

Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000).

selective mutism, anxiety disorder, and "[p]robable" borderline to low-average intellectual functioning. AR 258. Because of Plaintiff's lack of participation in testing, however, Dr. Colonna deferred to "actual academic standing within the school record programming, and observation on the playground if the claimant does interact at school, and today's presentation was selective." AR 259. Dr. Colonna assessed a GAF of 55. Id. She assessed a mild to moderate inability to understand, remember, and respond appropriately to complex requests, instructions, or questions; "probable" below-average language ability; and apparently moderately impaired social development. Id.

Shortly thereafter, Plaintiff's fourth-grade teacher, Janet Gallegos, completed a Teacher Questionnaire. AR 170-77. She reported that she had taught Plaintiff daily for the previous eight months in a classroom of 34 students. AR 170. She indicated that Plaintiff had problems acquiring and using information. AR 171. She reported serious problems in understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and recalling and applying previously learned materials. Id. She reported very serious problems in expressing ideas in written form and applying problem-solving skills in class discussions. Id. Gallegos indicated that Plaintiff "struggles" with reading comprehension, despite receiving extra support for 45 minutes four days a week. Id. She also indicated that Plaintiff had problems attending and completing tasks. AR 172. She reported obvious problems with paying attention when spoken to directly, carrying out multi-step instructions, completing work accurately without careless mistakes, and working without distracting self or others. Id. Notably, however, Gallegos did not indicate any problems interacting and relating with others. AR 173. Nor did she indicate any problems in the other three domains. AR 174-76.

///

5

C.   **ALJ's Findings**

The ALJ concluded that Plaintiff had less than marked limitation in acquiring and using information, noting that she attended regular classes at school but that Gallegos reported trouble with reading and mathematics. AR 23; see AR 171. The ALJ also concluded that Plaintiff had less than marked limitation in attending and completing tasks. AR 24. Here, the ALJ noted "the allegations regarding the claimant's fear of the dark, strangers, and loud talking" but gave Plaintiff "credit for doing chores around the house and doing her homework." Id.; see id. (noting that being "easily startled, distracted, or over-reactive" to stimuli could interfere with domain-two functioning (citing 20 C.F.R. § 416.926a(h)(3))). The ALJ concluded that Plaintiff had less than marked limitation in interacting and relating with others. AR 25. He noted her alleged "inability to have friends and her presentation at the hearing" but noted Gallegos's report that Plaintiff had no trouble interacting and relating with others at school. Id. Otherwise, the ALJ concluded that Plaintiff had no limitation in moving about and manipulating objects, caring for herself, and health and physical well-being. AR 25-27.

As demonstrated by the references to Gallegos's report, the ALJ gave the assessment of Plaintiff's teacher "great weight" because she "interacts with [Plaintiff] on a daily basis and has no motive to misrepresent [her] behavior." AR 22. In contrast, the ALJ gave "little weight" to the opinions of Drs. Jahan and Colonna because they only "had a one-time examination with the claimant," as opposed to Gallegos' opportunity to see her "daily, Monday through Friday, for the past several months." AR 23. The ALJ further noted that the doctors' assessments relied upon reports from Plaintiff's mother and that Dr. Colonna deferred to Plaintiff's academic standing and observations of her on the playground. AR 21-22.

///

6

**D.    Analysis**

Where an examining physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Here, the primary reason offered by the ALJ for giving little weight to the opinions of the examiners is the fact that they each had only a "one-time examination" with Plaintiff. In most cases, the fact that an examining physician saw the claimant on one occasion is not a clear and convincing reason for rejecting the examining physician's opinion. After all, nearly all examining physicians see the claimant only once. If this reason were sufficient in and of itself to discount the physician's opinion, the examining physician's opinion would almost always be discounted.  See Pasos v. Colvin, No. 14-1334, 2015 WL 1097329, at *5 (C.D. Cal. Mar. 9, 2015) (concluding that ALJ's finding that examining physician had examined claimant only once was not legitimate reason to discount physician's opinion because "it is well-settled that the opinions of examining physicians (who normally see claimants only once) are entitled to deference and subject to the same legal standard that the Commissioner must apply to the opinions of treating physicians"); Rubalcava v. Colvin, No. 12-1805, 2013 WL 4013404, at *2 (C.D. Cal. Aug. 5, 2013) (concluding that ALJ had not provided specific and legitimate reason for discounting consulting examiner's opinion where ALJ gave opinion less weight "because it was based on a one-time examination without the benefit of reviewing the claimant's longitudinal history").

Here, by contrast, the ALJ compared the examiners' observations with those offered by Gallegos, who had an opportunity as Plaintiff's teacher to see her daily for several months. In particular, the ALJ noted that Dr. Colonna deferred to "observation on the playground" as a better indicator of whether Plaintiff interacted with others. See AR 22 (citing AR 259). The ALJ followed

that advice, relying upon information from Plaintiff's teacher of eight months, who reported that Plaintiff had no problems interacting and relating with others. See AR 173.

Under these circumstances, the Court cannot find that the ALJ's reason for giving less weight to the opinions of the examiners was not clear and convincing. The record shows that Plaintiff did not interact with the examiners or the ALJ. See AR 33-34, 200, 254-55. Her mother said that it was "normal" for Plaintiff to behave that way "with strangers," AR 46, but confirmed that her teachers had reported no problems with Plaintiff's participation in class, AR 44 (noting that teacher "didn't tell me anything about that"). Gallegos's report showed that Plaintiff was able to interact and relate with others at school, a setting more reflective of her day-to-day functioning.

Plaintiff argues that Gallegos's opinion "cannot trump two acceptable medical sources." JS at 7. In fact, as the Social Security Administration has explained, a non-medical source can trump an acceptable medical source in certain circumstances:

> An opinion from a 'non-medical source' who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source. For example, this could occur if the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole.

SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Here, the ALJ did exactly what SSR 06-03p contemplates. He gave great weight to the opinion of a non-medical source who saw Plaintiff daily over several months as opposed

8

to the opinions of two doctors who each saw Plaintiff for a single examination.[2]

Plaintiff also argues that it was error for the ALJ to credit Gallegos's lay opinion yet discount the evidence offered by Plaintiff's mother, arguing that Plaintiff's mother also offered observations based on daily experiences. JS at 16. The ALJ credited much of Plaintiff's mother's testimony in assessing Plaintiff's limitations, including statements that Plaintiff was afraid of the dark, strangers, and loud noises; did chores at home and did her homework; and had difficulty making friends. See AR 24-25. He found, however, that some of her mother's statements were not supported by the medical evidence of record, a finding that Plaintiff does not challenge.[3] AR 21; compare AR 41 (mother testifying that Plaintiff had no friends) with AR 173-74 (Gallegos denying any issues socializing at school); compare AR 37 (mother testifying that Plaintiff's

---

[2] Further, even if the Commissioner had given greater weight to the opinions of Drs. Jahan and Colonna, he would not likely have found Plaintiff disabled because neither doctor opined that Plaintiff had disabling impairments. Rather, both assessed GAF scores indicating only moderate impairment. See AR 200, 259. And although Dr. Jahan assessed "marked" anxiety symptoms, he did not assess marked limitations in Plaintiff's functioning. AR 200.

[3] The ALJ also discounted the mother's testimony because "she has an emotional motivation to support the claimant as well as a financial interest in seeing the claimant receive benefits." AR 21. This was error. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009); Daniels v. Astrue, No. 09-1050, 2010 WL 1931264, at *7 (C.D. Cal. May 12, 2010). Because the ALJ provided other germane reasons for discounting her testimony, however, his error was harmless. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (noting that error that does not affect ALJ's ultimate determination is harmless); Jourdan v. Comm'r of Soc. Sec. Admin., 426 F. App'x 499, 500 (9th Cir. 2011); cf. Valentine, 574 F.3d at 694.

9

anxious, fearful behavior began as soon as "she was able to walk and talk") with AR 192 (Apr. 2011 treatment note indicating mother's report that Plaintiff was "doing well w/no health issues or concerns @ all"), 255 (mother reporting that Plaintiff timely met developmental milestones); see AR 200, 259 (Drs. Jahan and Colonna estimating only moderate impairment); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (noting that ALJ "need only give germane reasons for discrediting the testimony of lay witnesses" and that "[i]nconsistency with medical evidence is one such reason").[4]

This was undoubtedly a difficult case because of Plaintiff's inability to participate in the examinations. Yet the Court cannot say that the ALJ did not have a clear and convincing reason for giving great weight to the report from Plaintiff's teacher that indicated that reflected less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others, and less weight to the reports from the consulting examiners.

///
///
///
///

---

[4] Although not noted by the ALJ, there were other instances in which the limited medical evidence was inconsistent with Plaintiff's mother's statements. Compare AR 37 (in Feb. 2013, mother testifying that Plaintiff started having problems at new school) with AR 44 (mother testifying that Plaintiff's performance at new school "about the same" as at previous school) and AR 198 (in Mar. 2012, Dr. Jahan noting mother's report that "she was getting better at her new school"); compare AR 42 (mother testifying that medication was not helping with ADHD or insomnia) with AR 248 (in Sept. 2012, therapist noting noncompliance with prescribed medications), 250 (in Dec. 2012, therapist noting noncompliance)

**IV.**

**CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: October 29, 2015                          DOUGLAS F. McCORMICK

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

11